***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon review of the evidence, reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the parties at all relevant times.
3. City of Jacksonville was a self-insured employer, with its servicing agent being North Carolina Interlocal Risk Management Agency.
4. Plaintiff sustained a compensable injury by accident on 10 April 2001.
5. Plaintiff's injury arose out of and in the course of his employment with defendant-employer.
6. The following documents were stipulated and received into evidence:
a. Transcript of recorded statement taken 12 April 2001.
b. Packet of medical records and reports.
c. Packet of Industrial Commission forms.
d. Plaintiff's answers to defendants' interrogatories.
e. Form 22 wage chart, which was submitted after the 17 April 2002 hearing.
f. Documents relating to plaintiff's application for accident and disability insurance dated 27 December 2002.
g. Documents from Blue Cross Blue Shield submitted 6 May 2003.
7. The Pre-Trial Agreement dated 4 April 2002, which was submitted by the parties, is incorporated by reference.
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was forty years old with a high school diploma. He has been employed with defendant-employer since 1997, when he began working in the recreation department. After approximately two and a half years, plaintiff began working in the sanitation department. His job duties included going from house to house along a designated route and picking up garbage and furniture.
2. On 9 April 2001, plaintiff lifted a garbage can and felt a sharp pain running from his neck to his back. Plaintiff notified Derick Elmore, the driver of the garbage truck, that he had injured his back, but that he could finish the route. After finishing the route, plaintiff's pain had eased off, so he did not report it. A few days afterwards, plaintiff reported his injury to his supervisor, Carrie Terrell because his back pain had increased such that he was having difficulty walking. While plaintiff was waiting to get authorization for medical treatment, he presented to Onslow Memorial Hospital Emergency Room. Plaintiff's pain had spread from his neck and back to his hands and legs.
3. Plaintiff spoke with Wendy Poole, an adjuster with defendant-carrier, on 12 April 2001. She took a recorded statement. Plaintiff told Ms. Poole that he had been having pain problems for a long period of time and that he had injured his back while working at the recreation department. Plaintiff stated that he did not recall a specific incident that caused pain to his back. However, the back pain spread to his shoulders, arms and legs. Plaintiff feared that there was a problem with the nerves in his back. When Ms. Poole asked plaintiff if this injury was new and different from the injury to his lower back in 1997, plaintiff replied that "the arms are not the lower back[,]" indicating that the most recent injury was new and different from the 1997 injury.
4. Plaintiff indicated that he had been on a new route for approximately six months. He believed that the new route was longer than the one he used to work. Plaintiff indicated that he had informed co-workers about his pain.
5. Subsequently, defendants denied plaintiff's claim. Plaintiff took himself to the emergency room and to doctors. He submitted these treatments to his own health insurance through Blue Cross/Blue Shield. Plaintiff also carried disability insurance through AFLAC.
6. Derick Elmore testified that plaintiff notified him when he got hurt.
7. Carrie Terrell, the superintendent for the sanitation department, testified that plaintiff informed him of the back injury. He further testified that when he asked plaintiff about how it happened, plaintiff was unable to relate how the injury occurred. Mr. Terrell told plaintiff that if he could not name a specific incident, all defendant-employer could do was relate the injury to his previous 1997 back injury in order for plaintiff to get medical attention to his back. He also told plaintiff that workers' compensation would not accept a new claim from plaintiff if plaintiff could not point to a specific injury. Mr. Terrell testified that plaintiff's current route was actually shorter than he previous route by forty to fifty houses.
8. After plaintiff's conversation with Mr. Terrell about plaintiff's lack of a specific incident, plaintiff related a specific incident to Mr. Terrell. Mr. Terrell completed a supervisor's accident investigation form on 17 April 2001. On the form, Mr. Terrell indicated that plaintiff injured his back when lifting a fifty-five gallon can along his route on Bell Fork Road.
9. Plaintiff was referred to Dr. Hsu by the emergency room at Onslow County Memorial Hospital. Dr. Hsu first saw plaintiff on 18 May 2001. Plaintiff reported to Dr. Hsu that he had injured his back and neck while lifting a garbage can at work. Plaintiff complained of numb hands, urinary urgency and trouble with balance and with using his hands. An MRI on 23 May 2001 revealed a herniated disc at C4-5 and bone spurs. Plaintiff underwent surgery on 16 July 2001 when Dr. Hsu performed an anterior cervical discectomy. After the surgery, plaintiff's symptoms had improved except that plaintiff still had a lack of coordination in his legs. Dr. Hsu referred plaintiff to Dr. Alan Tamadon.
10. Dr. Tamadon first saw plaintiff on 18 September 2001. Plaintiff reported that he had been injured while lifting a garbage can at work. An examination was suggestive of a nerve root irritation. Dr. Tamadon recommended physical therapy. Dr. Tamadon testified that plaintiff was totally disabled until 1 November 2001, when plaintiff was given work restrictions of lifting no greater than twenty pounds. On 16 November 2001, Dr. Tamadon released plaintiff to return to work with no restrictions. He assigned a fifteen percent (15%) permanent impairment rating to plaintiff's neck.
11. Plaintiff was out of work form 18 May 2001 to 17 November 2001. Plaintiff returned to work after being released on 16 November 2001 and has been able to work full-time with no restrictions since then.
12. There are few inconsistencies as to plaintiff's testimony that he injured his back while picking up a garbage can at work. He reported the same account of his injury to his physicians, his driver and his supervisor. Plaintiff's testimony regarding the injury of his back is therefore accepted as credible.
13. Dr. Hsu opined that plaintiff's lifting of a garbage can at work caused plaintiff's injuries. Dr. Tamadon also believed that lifting a garbage can at work caused plaintiff's injuries.
14. As a result of his work-related injury on 9 April 2001, plaintiff was incapable of working from 18 May 2001 through 16 November 2001.
15. Plaintiff's average weekly wage on 10 April 2001 was $313.68, which yields a compensation rate of $209.23 per week.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of his employment with defendant as a direct result of the work assigned on or about 9 April 2001. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is not required to prove what he did to injure his back while lifting a garbage can or what specific can he was lifting when the injury occurred. He is only required to prove that he injured his back while lifting garbage cans while working his route during a cognizable period of time. N.C. Gen. Stat. § 97-2(6); Richards v. Town of Valdese,92 N.C. App. 222, 225, 374 S.E.2d 116, 118-19 (1988).
3. As a result of his 9 April 2001 compensable injury, plaintiff was incapable of earning wages from 18 May 2001 through 16 November 2001 and is entitled to temporary total disability compensation at the rate of $209.23 per week during this period. N.C. Gen. Stat. § 97-29.
4. In addition, plaintiff's neck was given a permanent partial impairment rating of fifteen percent (15%). Plaintiff is entitled to permanent partial disability compensation at the rate of $209.23 for 45 weeks. N.C. Gen. Stat. § 97-31.
5. Defendant-employer is obligated to pay for plaintiff's medical treatment, which was reasonably required to effect a cure, provide relief, or lessen plaintiff's disability.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $209.23 per week for the period from 18 May 2001 through 16 November 2001 for his compensable 9 April 2001 injury. Defendants shall pay plaintiff in a lump sum.
2. In addition, defendants shall pay to plaintiff permanent partial disability compensation at the rate of $209.23 for 45 weeks.
3. Defendants shall pay for all medical expenses incurred by plaintiff as a result of his compensable injury sustained on or about 9 April 2001 when bills have been submitted and approved by procedures adopted by the Industrial Commission.
4. A reasonable attorney fee in the amount of 25% of the compensation approved and awarded for plaintiff is approved and allowed for plaintiff's counsel. The attorney fee shall be deducted from the accrued compensation due plaintiff and paid directly to plaintiff's attorney.
5. Defendant-employer shall pay the costs.
This the ___ day of May 2004.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_________________ PAMELA THORPE YOUNG COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER